LEWISTON STEAM MILL COMPANY

*vs.*

RICHARDSON LAKE DAM COMPANY.

Androscoggin.     Opinion May 15, 1885.

*Waters. Improvement company. Driving logs. Streams. Dams.*

A corporation was chartered by the legislature and authorized to make such improvement to the upper Androscoggin river, and the chain of lakes and their connecting streams as would "facilitate and render more convenient the drifting, or driving of logs, masts, spars and other timber, by removing obstructions, building dams, wing dams, gates, piers, booms and so forth;" and it was further authorized to demand and receive a specified toll upon every log that should pass its dam at the outlet of Big lake, and an additional toll for passing the dam at the outlet of Richardson lake. *Held,*

1. That the company was bound to grant and render, in a reasonable manner, to any one paying such tolls, all the facilities that it has acquired and controls in derogation of the common right, by authority of its charter.

2. That the wants, desires or demands of a particular share-holder in such company cannot abridge or modify the duties and obligations of the company to the log owners.

3. That it is not material who are the owners of the lands upon which the dams are built so long as the company maintains them for the purposes expressed in its charter.

ON EXCEPTIONS.

An action on the case to recover damages for the failure of the defendant corporation to perform its corporate duties and liabilities for the years 1879, 1880, 1882, by reason of which large quantities of the plaintiff's logs, upon which it had paid toll to the defendant, in each of these years, failed to come to market and were lost to the plaintiff. The plea was the general issue. The verdict was for the plaintiff for five thousand one hundred and twenty-five dollars. The defendant moved to set the verdict aside, and alleged certain exceptions which are stated in the opinion.

*Strout and Holmes* and *Savaye and Oakes,* for the plaintiff.

*Josiah G. Abbott* and *Frye, Cotton and White,* for the defendant.

HASKELL, J.   Prior to the date of the defendant's charter, the Androscoggin river and the chain of lakes and their connecting streams, from which that river takes its rise, were navigable by the usual methods of lumbering, and had been so used for many years.   The distance by these waters from Big lake to the Topsham boom is more than one hundred seventy miles, and the usual time required to accomplish a drive their entire length was four years.

To facilitate the lumber navigation of these waters, the legislature chartered the defendant company by special act, approved March 22, 1853.   It was authorized to make such improvement in them as would "facilitate and render more convenient the drifting, or driving of logs, masts, spars and other timber, by removing obstructions, building dams, wing dams, gates, piers, booms and so forth," and to take and hold real and personal estate for the purpose to an amount not exceeding ten thousand dollars.   It was authorized to demand and receive a specified toll upon every log that should pass its dam at the outlet of Big lake and an additional toll for passing the dam at the outlet of Richardson lake.   The purpose of these dams is to store water for aid in the driving of shallow and rocky places below them. They make it possible to deliver a boom of logs from Big

lake into the Topsham boom in one season, that ordinarily, without them, it would require four seasons to accomplish.

The object, scope and purpose of this corporation is, to facilitate navigation for the benefit of lumbermen, from whom it may demand and receive its tolls. Its functions are, to benefit the lumbering industry from whence its revenues are to come. It can exact tolls, and in return is bound by law to grant and render in a reasonable manner to the industry burdened by them, all the facilities, that it has acquired and controls, in derogation of the common right, by authority of its charter. Of course it cannot be required to discharge so great a flood of water, as to endanger other interests lawfully existing below its dams on the Androscoggin waters, nor can it withhold water so as to diminish the natural flow, that each riparian owner has a lawful right to enjoy.

The plaintiff drove these waters in the years 1879, 1880 and 1882, and paid to the defendant tolls amounting to two thousand six hundred twenty-six dollars and thirty-two cents. The plaintiff claims, that the defendant by virtue of its charter, was required to give such facilities for the driving of lumber during those years, as its resources afforded. The defendant on the other hand contends, that other interests than those of lumbermen were to be considered in determining what were the reasonable facilities that it was required by law to afford the plaintiff. It claims that the mills at Lewiston were interested in retaining a store of water in the lakes by means of its dams, and that such interests ought to be considered in fixing the amount of water that the plaintiff could lawfully demand; and in order that such consideration might be weighed and considered by the jury, it offered in evidence proof, that another corporation, organized for the benefit of the mill owners at Lewiston, by authority of law had acquired and owned all the stock of the defendant company, and the land upon which its dams at the outlets of Big and Richardson lakes, respectively, are built. To the exclusion of this evidence the defendant has exception.

No authority has been cited at the bar showing the admissibility of the evidence excluded. Under its charter the defendant

corporation is authorized and required by law, in consideration for the receiving of tolls, to confer increased facilities in the enjoyment of a common right. To this purpose and end its functions go. So long as it gathers from the public a toll for the navigation of a public stream, just so long must it contribute an equivalent to those burdened with the toll. They have a right to demand and receive from the defendant, the full advantage of whatever it can reasonably give them from the resources, that it has been allowed by law to accumulate and retain. The wants, desires or demands of a particular shareholder in a corporation, charged by law with duties and obligations to the public, cannot abridge, or modify such duties, or obligations. They are fixed by law, and the corporation, so long as it assumes to perform the functions authorized by its charter, must respond, regardless of the private interest of any one, or all of its shareholders. Suppose a large manufacturer should acquire the major part of the stock of a railway company, would it be competent for the company in a suit against it for the denial of proper transportation facilities, to show in defense, that this manufacturer was an owner of the controling portion of its stock, and thereby had a right in furtherance of his own purposes to deny such reasonable facilities for transportation as the law requires? Would the fact that he was a stockholder, either increase, or diminish the liability of the corporation to the public? If not, then the fact would be wholly immaterial. The law gives to each shareholder an equal right with others to the uses and benefits the railway can afford, regardless of his interest in the stock of the company, and that fact could have no bearing upon the liabilitiy of the corporation to others.

So in the case at bar, it is of no consequence, who are the shareholders in the defendant company, whatever liability the law casts upon it towards the public can neither be increased nor diminished at the will or desire of any shareholder. Its functions are to faciliate the lumber navigation of the Androscoggin waters, and as an equivalent for the collecting of tolls it must yield its whole resources to that end and purpose.

Nor is it material, who are the owners of the lands upon which

the dams are built, so long as the defendant company maintains them for the purposes expressed in its charter. If in order to acquire the right to maintain the dams, the defendant became under obligations modifying its full and complete control and use of the water for the purposes expressed in its charter, such obligations might have to be regarded, because its tenure would be subject to such limited use. No evidence of this sort has been excluded. The defendant simply offered in this behalf to show that another was the owner of the land upon which its dams are built. That naked fact has no bearing upon the issue decided by the jury. The evidence excluded does not tend to prove any material fact in defense of the plaintiff's case.

That the Union water power company was authorized by the legislature to acquire and hold the stock of defendant company does not in any degree modify, or change the functions of the corporation. Its duties and obligations continue the same that its charter under the law originally imposed; and so long as it continues to exercise corporate functions under its charter, it must do so in accordance with its terms, burdened with those duties and obligations which the law imposes.

True it is, that the mill owners below, as riparian proprietors, may require of the defendant the natural flow of the waters of the stream as they may need them, but the defendant owes them no duty to retain and store up waters for their use in times of drought.

A careful consideration of the evidence fails to show, that the jury has erred in its verdict. The defendant manifestly had means to afford the plaintiff greater facilities in the driving of its logs during the years 1879, 1880 and 1882, than it accorded to it. It had a right to demand from the defendant more water than it received during each of those years. The denial to it of this use was an injury for which the law gives damages. A careful, lengthy trial, with plenary instructions and rulings in matters of law, to which no exceptions, other than those noticed in this opinion, were taken, resulted in a verdict for the plaintiff. It is hard to say, whether the measure of damages fixed by the jury is precisely commensurate with the plaintiff's injury, but it

does not appear from the evidence that the jury were misled, or influenced by any improper motive, or consideration in reaching their verdict; nor is it clear that a new trial would end in a more satisfactory result.

*Motion and exceptions overruled.*

PETERS, C. J., WALTON, VIRGIN, LIBBEY and EMERY, JJ., concurred.